# United States Court of Appeals
## For the First Circuit

No. 99-1972

CHARLES C. DELANEY III,

Petitioner, Appellant,

v.

JAMES MATESANZ ET AL.,

Respondents, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Robert E. Keeton, U.S. District Judge]

Before

Selya, Circuit Judge,

Coffin and Stahl, Senior Circuit Judges,

Owen S. Walker, Federal Defender, with whom Elizabeth L. Prevett, Federal Defender Office, and Charles C. Delaney III, pro se ipso, were on brief, for appellant.
Catherine E. Sullivan, Assistant Attorney General, Commonwealth of Massachusetts, with whom Thomas F. Reilly, Attorney General, was on brief, for appellees.

September 5, 2001

**SELYA, Circuit Judge.** Petitioner-appellant Charles C. Delaney III, a Massachusetts state prisoner, sought a writ of habeas corpus in the United States District Court for the District of Massachusetts, but voluntarily withdrew his application when the Commonwealth pointed out that it contained unexhausted claims. After pursuing all available state remedies, the petitioner returned to federal court. At that juncture, the court dismissed his new application as untimely under the one-year limitation period enacted as part of the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996).

The petitioner appeals this order, asseverating that the district court erred in refusing to toll the limitation period during the pendency of his original federal habeas petition; that absent such tolling the statutory limitation violates the Suspension Clause; and that, in all events, the district court abused its discretion by failing to resuscitate his time-barred claim on equitable grounds. Recent Supreme Court precedent holding that the relevant statutory provision, 28 U.S.C. § 2244(d)(1), may not be tolled by the pendency of federal, as opposed to state, post-conviction proceedings defeats the first of these asseverations. See Duncan v. Walker, 121 S. Ct. 2120, 2129 (2001). The second fails on the law. The

-3-

third fails on the facts:  even assuming, for argument's sake, that equitable tolling is available in the precincts patrolled by section 2244(d) — a matter on which we take no view — the district court supportably determined that the petitioner had not established a sufficiently compelling basis for remediation. Consequently, we uphold the district court's dismissal of the petitioner's application for habeas relief.

I.  **BACKGROUND**

We retrace the relevant portions of the petitioner's journey through the procedural labyrinth that typifies modern habeas litigation.  The facts are essentially uncontested.

In 1989, a Massachusetts jury found the petitioner guilty of murder in the second degree.  The trial judge sentenced him to life imprisonment.  On direct review, his conviction was sequentially affirmed by the Massachusetts Appeals Court and the Supreme Judicial Court.  See Commonwealth v. Delaney, 616 N.E.2d 111 (Mass. App. Ct. 1993), aff'd, 639 N.E.2d 710 (Mass. 1994).  The conviction became final on September 20, 1994.

On February 24, 1997, ten months after the AEDPA's effective date, the petitioner for the first time asked the federal district court for a writ of habeas corpus.  See 28 U.S.C. § 2254.  In this pro se petition (Petition No. 1), he

reasserted various claims that he had presented to the state courts and added four new (unexhausted) claims. The Commonwealth promptly moved to dismiss this "mixed" petition. See Rose v. Lundy, 455 U.S. 509, 522 (1982) (holding that a federal habeas court ordinarily should not adjudicate a "mixed" petition, i.e., one containing both exhausted and unexhausted claims); Adelson v. DiPaola, 131 F.3d 259, 261-62 (1st Cir. 1997) (same). The petitioner countered by moving to dismiss the action without prejudice. The district court granted the latter motion on May 2, 1997.

On June 6, 1997, the petitioner returned to state court and filed a motion for a new trial that raised two ineffective assistance of counsel claims. These claims were not the claims previously asserted in Petition No. 1, but, rather, were newly minted. The superior court denied this motion a few weeks later and, by March 27, 1998, the petitioner had exhausted all available state appellate remedies.

On April 10, 1998, the petitioner refiled for federal habeas relief, raising only the two ineffective assistance of counsel claims. Citing 28 U.S.C. § 2244(d)(1), the district court dismissed this application (Petition No. 2) as untimely. When the petitioner moved for reconsideration, the court withheld a ruling and asked us to consider whether Petition No.

2 was a "second or successive" habeas petition, and thus subject to the gatekeeping requirement of 28 U.S.C. § 2244(b)(3). See generally Pratt v. United States, 129 F.3d 54, 57-58 (1st Cir. 1997). Following the reasoning explicated in Slack v. McDaniel, 529 U.S. 473, 487 (2000), we advised the lower court that Petition No. 2 was not a "second or successive" petition and that, therefore, the gatekeeping regime did not apply.

The district court proceeded to deny the petitioner's motion for reconsideration on the merits. The court then granted a certificate of appealability. See 28 U.S.C. § 2253(c). We augmented the issues, appointed counsel for the petitioner, consolidated the case for argument with a case containing a similar limitation issue, and heard oral argument on November 9, 2000. Four days later, the Supreme Court granted certiorari to review the decision of the United States Court of Appeals for the Second Circuit in Walker v. Artuz, 208 F.3d 357 (2d Cir.), cert. granted sub nom. Duncan v. Walker, 121 S. Ct. 480 (2000). Because Duncan squarely raised the question of whether section 2244(d)(1) could be tolled by the pendency of federal, as well as state, post-conviction proceedings, we stayed our hand.

The Supreme Court decided Duncan on June 18, 2001. By order entered June 28, 2001, we vacated the stay previously

-6-

entered in this case and the companion case.  We resolved the companion case in an opinion filed on August 20, 2001, <u>see</u> <u>Neverson</u> v. <u>Bissonnette</u>, ___ F.3d ___ (1st Cir. 2001) [No. 00-1044], and now decide the petitioner's appeal.

## II.  ANALYSIS

Congress enacted the AEDPA on April 24, 1996, in part to combat increasingly pervasive abuses of the federal courts' habeas jurisdiction.  <u>Felker</u> v. <u>Turpin</u>, 518 U.S. 651, 664 (1996).  Pertinently, the AEDPA imposed a one-year limitation period applicable to state prisoners' habeas applications. <u>See</u> 28 U.S.C. § 2244(d)(1).  This period of limitation normally begins to accrue on "the date on which the [state court] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  <u>Id.</u> § 2244(d)(1)(A).

The courts have determined that this language encompasses a one-year grace period within which state prisoners may file federal habeas petitions to test the correctness of convictions that became final before the AEDPA's effective date. <u>See</u> <u>Gaskins</u> v. <u>Duval</u>, 183 F.3d 8, 9 (1st Cir. 1999) (per curiam); <u>see</u> <u>also</u> <u>Duncan</u>, 121 S. Ct. at 2130 n.1 (Stevens, J., concurring) (collecting cases to like effect from other circuits).  Accordingly, the petitioner had until April 24,

-7-

1997, to file an application for federal habeas relief. He docketed Petition No. 1 within that window of opportunity, but he voluntarily withdrew that petition. He did not propound Petition No. 2 until April 10, 1998 (nearly a year after the grace period had run its course). Hence, that petition was time-barred, as the district court ruled, absent some sufficiently excusatory circumstance.

The petitioner's principal attempt to rescue his habeas application implicates 28 U.S.C. § 2244(d)(2), which provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under [section 2244(d)]." But this provision is of no help to the petitioner: although it plainly tolls the limitation period from and after June 6, 1997 (the date upon which he moved for a new trial in state court), the one-year period already had elapsed by that date.

In an attempt to overcome this obstacle, the petitioner contends that the reference in section 2244(d)(2) to "other collateral review" includes not only state collateral review proceedings but also federal habeas proceedings. If that were so, the pendency of Petition No. 1 would have tolled the limitation period from the date of filing (February 24, 1997) to

the date of dismissal (May 2, 1997), and this hiatus, coupled with the tolling that accompanied the petitioner's pursuit of post-conviction remedies in the state courts during the period from June 6, 1997, through March 27, 1998, would have rendered Petition No. 2 timely (i.e., filed within one year of April 24, 1996, after subtracting "tolled" periods). As a first fallback position, the petitioner maintains that the statutory limitation period, if construed otherwise, violates the Constitution. As a second fallback, he asserts that even if his reading of section 2244(d)(2) proves overly sanguine and the provision nonetheless is constitutional, the district judge erred in refusing to apply principles of equitable tolling to assure his day in court. We address each of these arguments.

## A. **Statutory Tolling.**

The question of what Congress meant when it wrote that the AEDPA's limitation period, 28 U.S.C. § 2244(d)(1), would be tolled while a state prisoner pursued "State post-conviction or other collateral review," id. § 2244(d)(2), is no longer open. The Duncan Court made it crystal clear that the adjective "State" qualifies both of the phrases that follow. 121 S. Ct. at 2128. Accordingly, section 2244(d)(2), properly construed, "toll[s] the limitation period for the pursuit of state remedies [but] not during the pendency of applications for federal

-9-

review." Id. It follows inexorably that "an application for federal habeas corpus review is not an 'application for State post-conviction or other collateral review' within the meaning of 28 U.S.C. § 2244(d)(2)." Id. at 2129; accord Neverson, ___ F.3d at ___ [slip op. at 8-9]. This means, of course, that the pendency of Petition No. 1 did not toll the limitation period (and, therefore, did not render Petition No. 2 timeous).

### B. **The Suspension Clause**.

The petitioner rejoins that so restrictive an interpretation of the statutory tolling provision renders the AEDPA's limitation period constitutionally suspect under the Suspension Clause. Duncan does not foreclose this argument — the Suspension Clause was not raised in that case — so we address it here.

The Suspension Clause states that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. 1 § 9, cl. 2. In Felker, 518 U.S. at 663, the Court noted that the purpose of the writ has changed over time. In 1789, the writ was designed primarily to protect against the power of the Executive to hold someone captive without trial, INS v. St. Cyr, 121 S. Ct. 2271, 2280 (2001), and it was not until 1867 that Congress extended the writ to include

state prisoners who challenged their convictions on constitutional or statutory grounds. See Felker, 518 U.S. at 559-60. Because the current writ is so different from the one known to the Framers, some jurists have questioned whether — and to what extent — the Suspension Clause applies to the modern habeas remedy. E.g., Freeman v. Page, 208 F.3d 572, 576 (7th Cir.), cert. denied, 121 S. Ct. 345 (2000). The Supreme Court has yet to answer that question,[1] and we need not do so today.

Even assuming, for purposes of our inquiry, that the Suspension Clause applies, reasonable limits on the use and application of the habeas remedy do not work an unconstitutional suspension of the writ. See United States v. Barrett, 178 F.3d

---

[1]While the historical puzzle remains unsolved, the Justices apparently harbor divergent views about the sweep of the Suspension Clause. In a set of opinions analyzing the interaction between the Illegal Immigration Reform and Immigrant Responsibility Act, Pub. L. No. 104-108, 110 Stat. 3009-546, and the AEDPA, Justice Stevens, writing for a five-member majority, interpreted these statutes as allowing habeas relief for certain aliens, predicting that any other reading would raise serious constitutional questions under the Suspension Clause. St. Cyr, 121 S. Ct. at 2282; Calcano-Martinez v. INS, 121 S. Ct. 2268, 2270 (2001) (adopting St. Cyr's Suspension Clause analysis). Justice Scalia, in dissents joined by Chief Justice Rehnquist and Justice Thomas, posited that the Suspension Clause does not affirmatively guarantee a right to habeas corpus, but simply prohibits temporary withholding of the writ. See St. Cyr, 121 S. Ct. at 2299 (Scalia, J., dissenting); Calcano-Martinez, 121 S. Ct. at 2271 (Scalia, J., dissenting). Justice O'Connor filed separate dissents in both cases, taking no position on the specific meaning and application of the Suspension Clause. See St. Cyr, 121 S. Ct. at 2293 (O'Connor, J., dissenting); Calcano-Martinez, 121 S. Ct. at 2270 (O'Connor, J., dissenting).

34, 53 (1st Cir. 1999), cert. denied, 528 U.S. 1176 (2000). The Court has held, for example, that the AEDPA's stringent restrictions on second habeas petitions do not run afoul of the Suspension Clause. See Felker, 518 U.S. at 664. We believe that the same reasoning applies to the AEDPA's time-limiting provisions. We therefore join several of our sister circuits in holding that the AEDPA's one-year limitation period does not, as a general matter, offend the Suspension Clause. See Wyzykowski v. Dep't of Corrs., 226 F.3d 1213, 1217-18 (11th Cir. 2000); Lucidore v. New York State Div. of Parole, 209 F.3d 107, 113 (2d Cir.), cert. denied, 121 S. Ct. 175 (2000); Turner v. Johnson, 177 F.3d 390, 392-93 (5th Cir.), cert. denied, 528 U.S. 1007 (1999); Miller v. Marr, 141 F.3d 976, 977-78 (10th Cir. 1998).[2]

The question reduces, then, to whether the tolling provision, 28 U.S.C. § 2244(d)(2), as interpreted by the Duncan Court, renders the AEDPA's limitation period vulnerable to the petitioner's attack. We think not. The AEDPA's one-year statute of limitation is part of "a complex and evolving body of equitable principles informed and controlled by historical

_____

[2]Some courts have suggested that the AEDPA's built-in limitation period might violate the Suspension Clause if a prisoner-petitioner could make a showing of actual innocence. See, e.g., Wyzykowski, 226 F.3d at 1218-19; Lucidore, 209 F.3d at 113-14. Because Delaney makes no such proffer, we need not reach this question.

usage, statutory developments, and judicial decisions." <u>Felker</u>, 518 U.S. at 664 (quoting <u>McCleskey</u> v. <u>Zant</u>, 499 U.S. 467, 489 (1991)). Rather than rendering the limitation period more onerous, the tolling provision relaxes its rigors. That the provision is not as generous as the petitioner might like does not undermine the reasonableness of the framework that Congress chose to erect. It follows that the tolling provision falls well within the heartland of the evolutionary process described by the <u>Felker</u> Court.

To sum up, the one-year limitation period of section 2244(d)(1), as embellished by the tolling provision of section 2244(d)(2), does not suspend the writ because, when read in tandem, these provisions neither gut the writ of habeas corpus nor render it impuissant to test the legality of a prisoner's detention. <u>See</u> <u>Swain</u> v. <u>Pressley</u>, 430 U.S. 372, 381 (1977) (describing the contours of the Suspension Clause). Tolling the limitation period during the pendency of state post-conviction proceedings leaves habeas petitioners with a reasonable opportunity to have their claims heard on the merits. <u>See</u> <u>Lucidore</u>, 209 F.3d at 113. From the standpoint of the Suspension Clause, no more is exigible.[3]

_____

[3]Relatedly, the petitioner asserts that the limitation period, as embroidered by the tolling provision, has an impermissibly retroactive effect. This argument is hopeless,

-13-

We add a postscript. The Suspension Clause applies (if at all) only when Congress totally bars an individual or a group from access to habeas relief. See Barrett, 178 F.3d at 53. Here, the petitioner had ample opportunity, both before and after Congress passed the AEDPA, to exhaust state court remedies and seek federal habeas review. That he had those opportunities and did not seasonably avail himself of them is, in itself, enough to doom his constitutional challenge. See Molo v. Johnson, 207 F.3d 773, 775 (5th Cir. 2000) (per curiam) (holding that the Suspension Clause was not violated when nothing prevented the prisoner from filing his application before the statute of limitation expired).

## C. Equitable Tolling.

In the district court, the petitioner argued, in the alternative, that the court should deem the limitation period tolled as a matter of equity. The court entertained this argument but rejected it on the merits. The petitioner renews the argument on appeal, positing that the district court erred in refusing to rejuvenate his time-barred habeas application.

---

see Rogers v. United States, 180 F.3d 349, 353-55 (1st Cir. 1999), cert. denied, 515 U.S. 1126 (2000) (rejecting similar retroactivity argument); Libby v. Magnusson, 177 F.3d 43, 46 (1st Cir. 1999) (same); cf. Pratt, 129 F.3d at 58 (discussing retroactivity in the context of second or successive habeas petitions), and we reject it out of hand.

We review the district court's ruling for abuse of discretion. See United States v. Patterson, 211 F.3d 927, 931 (5th Cir. 2000); see also Borden v. Paul Revere Life Ins. Co., 935 F.2d 370, 377 (1st Cir. 1991) ("[F]ashioning or withholding equitable relief . . . rests uniquely within the discretion of the trial court."). This is a highly deferential standard, but not an unbounded one. See United States v. Roberts, 978 F.2d 17, 20 (1st Cir. 1992); Indep. Oil & Chem. Workers, Inc. v. Procter & Gamble Mfg. Co., 864 F.2d 927, 929 (1st Cir. 1988).

The concurring opinion in Duncan furnishes at least some support for the view that, in an appropriate case, equitable tolling may be available to soften the rigors of section 2244(d)(1). There, Justice Stevens, writing for himself and Justice Souter, took the position that "neither the Court's narrow holding [in Duncan], nor anything in the text or legislative history of AEDPA, precludes a federal court from deeming the limitations period tolled for such a petition as a matter of equity." Duncan, 121 S. Ct. at 2130 (Stevens, J., concurring). This is interesting food for thought,[4] but we need not resolve today whether courts ever can apply equitable

---

[4]Post-Duncan, at least one court of appeals has held that equitable tolling is available to habeas petitioners in respect to section 2244(d)(1)'s one-year limitation period. See Zarvela v. Artuz, 254 F.3d 374, 379 (2d Cir. 2001).

tolling to ameliorate the AEDPA's one-year statute of limitations. In this case, the district court squarely confronted the petitioner's equitable tolling claim and rejected it on the facts. Assuming, arguendo, the availability of equitable tolling, the record makes manifest that the district court acted within its proper province in withholding such relief.

The party who seeks to invoke equitable tolling bears the burden of establishing the basis for it. Carter v. W. Publ'g Co., 225 F.3d 1258, 1265 (11th Cir. 2000); I.V. Servs. of Am., Inc. v. Inn Dev. & Mgmt., Inc., 182 F.3d 51, 54 (1st Cir. 1999). In the AEDPA environment, courts have indicated that equitable tolling, if available at all, is the exception rather than the rule; resort to its prophylaxis is deemed justified only in extraordinary circumstances. E.g., United States v. Marcello, 212 F.3d 1005, 1010 (7th Cir.), cert. denied, 121 S. Ct. 188 (2000); Davis v. Johnson, 158 F.3d 806, 810 (5th Cir. 1998), cert. denied, 526 U.S. 1074 (1999); Sandvik v. United States, 177 F.3d 1269, 1271-72 (11th Cir. 1999). The district court found that the petitioner did not meet this benchmark, and the argument to the contrary is not compelling.

The petitioner maintains that he is entitled to equitable tolling because he diligently pursued judicial

-16-

remedies. Even if the district court were obligated to apply equitable tolling for an attentive applicant, the facts of record here do not corroborate the petitioner's contention that he was diligent. He waited over two years after his conviction became final (and ten months after the AEDPA's effective date) to promulgate his first federal habeas petition. He did nothing during that protracted period to exhaust state remedies as to the ineffective assistance of counsel claims that he now seeks to advance. Indeed, his first habeas application ignored those claims and, at any rate, he withdrew that application in the face of the AEDPA's known one-year limitation period, without asking the district court to retain jurisdiction.[5] He did not file a proper habeas application until April of 1998 — more than eleven months after the AEDPA's limitation period had expired.

---

[5]The petitioner perhaps could have improved his position by requesting that the district court stay, rather than dismiss, Petition No. 1. See Duncan, 121 S. Ct. at 2130 (Stevens, J., concurring) (observing that "there is no reason why a district court should not retain jurisdiction over a meritorious claim and stay further proceedings pending the complete exhaustion of state remedies"); Neverson, ___ F.3d at ___ n.3 [slip op. at 11 n.3] (describing such an approach as "preferable" in cases involving "mixed" petitions); see also Zarvela v. Artuz, 254 F.3d 374, 380 (2d Cir. 2001); Freeman, 208 F.3d at 577; Calderon v. United States Dist. Ct., 134 F.3d 981, 986-87 (9th Cir. 1998). We especially commend such an approach to the district courts in instances in which the original habeas petition, though unexhausted, is timely filed, but there is a realistic danger that a second petition, filed after exhaustion has occurred, will be untimely.

The district court was well aware of these facts and took them into account in addressing the petitioner's plea for equitable tolling. Judge Keeton noted that while the petitioner had pursued a variety of claims over a nine-year period, he had not done so in an especially assiduous fashion. See Delaney v. Matesanz, No. 98-10635-REK, slip op. at 7 (D. Mass. Nov. 6, 1998) (unpublished). In addition, Judge Keeton found no extraordinary circumstances that might suffice to excuse the petitioner's failure to comply with the temporal deadline: no one lulled the petitioner into a false belief that he had more than the allotted time to file, or otherwise misled him. Id.

We need not rehearse all the details of the decision below. What matters is that the judge plainly considered all the pertinent factors and no impertinent ones. Given his thorough explanation, we cannot say that his refusal to apply principles of equitable tolling to salvage the petitioner's time-barred habeas application constituted a plain mistake in judgment. After all, "the principles of equitable tolling . . . do not extend to what is at best a garden variety claim of excusable neglect." Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990).

The petitioner makes a final plea. He says that because he was a pro se prisoner, ignorant of the applicable

-18-

law, the lower court should have tolled the limitation period. We reject this plea. In the context of habeas claims, courts have been loath to excuse late filings simply because a pro se prisoner misreads the law. E.g., Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2000), cert. denied, 121 S. Ct. 1195 (2001) (refusing to toll the AEDPA's limitation period because a pro se petitioner did not understand the dictates of the statutory scheme); Jones v. Morton, 195 F.3d 153, 159-60 (3d Cir. 1999) (explaining that misunderstanding the effect of filing a prior unexhausted federal habeas petition does not warrant equitable tolling); Fisher v. Johnson, 174 F.3d 710, 714 (5th Cir. 1999), cert. denied, 121 S. Ct. 1124 (2001) ("[I]gnorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing.").

In this instance, the district court had good reason to follow this line of authority. The court specifically remarked that the petitioner was no ordinary pro se litigant; his submissions, in the court's view, displayed a clear understanding of the AEDPA amendments. See Delaney, supra, slip op. at 7. We are reluctant to second-guess this fact-sensitive judgment. While judges are generally lenient with pro se litigants, the Constitution does not require courts to undertake

-19-

heroic measures to save pro se litigants from the readily foreseeable consequences of their own inaction.

Even where available, equitable tolling is normally appropriate only when circumstances beyond a litigant's control have prevented him from filing on time. Bonilla v. Muebles J.J. Alvarez, Inc., 194 F.3d 275, 278-79 (1st Cir. 1999) (addressing equitable tolling in the context of the ADA). In the usual case, a court may deny a request for equitable tolling unless the proponent shows that he was actively misled or prevented "in some extraordinary way from asserting his rights." Patterson, 211 F.3d at 930-31 (citation omitted). In short, equitable tolling is strong medicine, not profligately to be dispensed.

In this case, the Commonwealth did not mislead the petitioner, nor has he alleged any exceptional circumstances that prevented him from filing his habeas petition on time. Accordingly, the lower court acted within its discretion in declining to excuse the petitioner's non-compliance with the legislatively-mandated limitation period.

## III. CONCLUSION

We need go no further. The Supreme Court's interpretation of section 2244(d)(2) permits courts to toll the limitation period only while state collateral review is pending. See Duncan, 121 S. Ct. at 2128-29; Neverson, ___ F.3d at ___

-20-

[slip op. at 8-9]. The instant petition therefore fails because the petitioner did not bring it within this constitutionally permissible interval. Moreover, no extraordinary circumstances prevented him from protecting his own interests, so the district court did not abuse its discretion in declining to apply equitable tolling to resuscitate his time-barred habeas case.

**Affirmed**.